ELECTRONICALLY FILED
Grant County Circuit Court
Geral Harrison, Circuit/County Clerk
2021-Apr-05 16:19:57
27CV-21-33
C07D01 : 15 Pages

## IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
## CIVIL DIVISION

**JAMES KIGHT**                                                      **PLAINTIFF**

**V.**                              **CASE NO. _____**

**GOVERNMENT EMPLOYEES INSURANCE**
**COMPANY a/k/a GEICO**                              **DEFENDANT**

### COMPLAINT

Comes now the Plaintiff, James Kight, by and through his undersigned Attorneys, Paul Byrd Law Firm, PLLC, who brings this Complaint against the Defendant, Government Employees Insurance Company a/k/a GEICO ("GEICO"), alleges and states:

### I. INTRODUCTION

1.     On April 5, 2018, James Kight was traveling southbound on I-530 near "log mile" 28 in Jefferson County, Arkansas.  As James Kight traveled southbound, Dan Edward Owney, Jr., ("Dan Owney") was traveling at a speed in excess of 100 miles per hour. Mr. Kight had the superior right-of-way on I-530 and Dan Owney while traveling in excess of 100 miles per hour did rear-end James Kight's vehicle.  The front of Mr. Owney's vehicle struck the back of Mr. Kight's vehicle with such force that Mr. Kight's vehicle rolled multiple times. Progressive Insurance Company ("Progressive") insured the car driven by Dan Owney, and tendered the full policy limits of $25,000.00 to Mr. Kight. Mr. Kight then proceeded with opening an underinsured motorist claim because the

settlement with Progressive did not make Mr. Kight whole.  At the time of the collision, Mr. Kight purchased insurance coverage through GEICO and underinsured motorist coverage was included on that policy.  Mr. Kight brings this suit against GEICO pursuant to Arkansas state law seeking remedy due to GEICO's actions and inactions during the claims process of that underinsured motorist claim.

## II. PARTIES

2.      James Kight incorporates by reference herein the preceding paragraph as though stated word-for-word.

3.      At all times relevant herein, Plaintiff James Kight was a resident and citizen of Grant County, Arkansas.

4.      Defendant GEICO is an insurance company licensed to do business in the State of Arkansas and is a citizen of the State of Arkansas pursuant to 28 USC 1332(c)(1)(A).

## III. JURISDICTION AND VENUE

5.      James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

6.      This Court has jurisdiction of the parties and subject matter.  Ark. Code Ann. § 16-55-213(a)(3)A) states that venue is proper in the county in which plaintiff resided, which is Grant County, Arkansas.  Additionally, Ark. Code Ann. § 16-60-112 in relevant part states that actions for damages for personal injury shall be brought in either the county where the injury occurred or in the county where the person injured resided at the time of the injury.  Therefore, venue is proper in Grant County, Arkansas.

## IV. FACTS

7.      James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

8.      On April 5, 2018, James Kight was traveling southbound on I-530 in Jefferson County, Arkansas.

9.      Dan Owney, traveling in excess of 100 miles per hour, was unable to control his vehicle and rear-ended Mr. Kight's vehicle with such force that Mr. Kight's vehicle rolled multiple times.

10.     At all times, James Kight operated his vehicle in a safe and prudent manner.

11.     As a result of the wreck, James Kight sustained severe and permanent injuries.

12.     Plaintiff James Kight purchased car insurance, including UIM benefits, through Defendant GEICO.  The policy number is 4288-06-46-88.  The UIM liability limits are $100,000.  A certified copy of the policy is attached as Exhibit A.

### V. CAUSATION OF JAMES KIGHT'S INJURIES AND DAMAGES

13.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

14.     The injuries and damages sustained by James Kight, more particularly described below, were produced in a natural and continuous sequence from the underinsured motorist's violations of one or more of the above described independent duties to use ordinary care for the safety of Mr. Kight.

15.     The injuries and damages sustained by James Kight were a probable consequence from the underinsured motorist's violations of one or more of the above described independent duties to use ordinary care for the safety of Mr. Kight.

16.     The underinsured motorist should have foreseen and anticipated that a violation of one or more of the above described independent duties to use ordinary care and follow the safety rules would constitute an appreciable risk of harm to others, including James Kight.

17.     If the underinsured motorist had not violated one or more of the above-described independent duties to use ordinary care and to follow the traffic safety rules for the safety of James Kight, then Mr. Kight's injuries and damages would not have occurred.

## VI. COMPENSATORY DAMAGES SUSTAINED BY JAMES KIGHT

18.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

19.     The injuries and damages sustained by James Kight as a result of the underinsured motorist's violations of one or more of the above safety rules, include, but are not limited to, the following:

a.     Serious and permanent bodily injuries to James Kight, which is a life changing event causing Mr. Kight to lose the ability to enjoy a normal quality of life, and depriving his of the right to live his life in comfort and ease without added inconvenience or diminution of physical vigor;

b.     Aggravation of conditions already then existing at the time of the collision that predisposed James Kight to injury to a greater extent than another person;

c.  Medical expenses incurred in the past and reasonably expected to be incurred in the future, and transportation expenses to obtain such medical treatment;

d.  Physical pain and suffering experienced in the past and reasonably expected to be experienced in the future;

e.  Mental anguish experienced in the past and reasonably expected to be experienced in the future, which includes, but is not limited to, James Kight's loss of quality of life due to permanent injuries causing chronic pain that limits his activities; and

f.  The reasonable expense of any necessary help in James Kight's home reasonably certain to be required in the future, as a result of Mr. Kight's injuries.

## VII. JAMES KIGHT'S UNDERINSURED MOTORIST CLAIM WITH DEFENDANT GEICO

20.    James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

21.    On June 12, 2019, the liability insurance carrier for Dan Owney offered to settle James Kight's primary claim for $25,000.00, which was the at- fault motorist's liability policy limits.

22.    On or about October 25, 2019, Mr. Kight made a demand in the amount of GEICO's $100,000.00 policy limit.

23.    On October 31, 2019, GEICO waived their subrogation rights in the tentative settlement proceeds between Mr. Kight and the underinsured motorist.

24.    On November 11, 2020, GEICO responded to that demand, offering less than the policy limit.

## VIII. DUTIES OWED BY DEFENDANT GEICO

25.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

26.     The underinsured motorist ("UIM") coverage provided by GEICO states that GEICO will pay all sums that Mr. Kight is legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle.

27.     The compensatory damages James Kight is legally entitled to recover from the underinsured motorist are provided in paragraph 23 above.

28.     The compensatory damages provided in paragraph 23 above is the applicable law as it relates to the underinsured motorist insurance policy issued by GEICO referred to in paragraph 13 above.

29.     GEICO owed a duty to evaluate James Kight's claim in good faith and deal fairly with Mr. Kight in performing GEICO's obligations under the insurance policy.

30.     GEICO owed a duty to provide James Kight with a reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law for GEICO's settlement offers.

31.     GEICO owed a duty to consider all of the documentation and evidence supporting James Kight's UIM claim.

32.     In determining whether to accept or reject an offer of compromise, GEICO owed a duty to give James Kight at least equal consideration to Mr. Kight's interests as GEICO gave its own interest.

33.     GEICO owed a duty to treat James Kight consistently with the requirements of the laws and regulations promulgated by the Arkansas Insurance Department and codified by the Trade Practices Act.

34.     GEICO owed a duty to conduct a full, fair, prompt, and objective investigation of James Kight's UIM claim at GEICO's own expense.

35.     GEICO owed a duty to fully, fairly, and promptly evaluate James Kight's UIM claim.

36.     GEICO owed a duty to avoid denying or underpaying any part of James Kight's UIM claim based upon insufficient information, speculation, or biased information.

37.     GEICO owed a duty to provide James Kight with a written explanation pointing to facts and policy provisions supporting a denial of his claim.

38.     GEICO owed a duty to objectively evaluate James Kight's UIM claim based on all available evidence, and not just the evidence GEICO believes to support its position.

39.     GEICO owed a duty to consider only factors in its evaluation of James Kight's UIM claim for which there was evidence.

40.     GEICO owed a duty under Arkansas law to avoid preventing, hindering, or delaying the performance of its obligations owed to James Kight and other policyholders.

41.     GEICO owed a duty to treat James Kight's UIM claim as a non-adversarial process.

42.   GEICO owed a duty to James Kight to educate its auto claims adjusters about the nature, extent, and permanency of injuries capable of being caused by motor vehicle collisions.

43.   GEICO owed a duty to James Kight to ensure its auto claims adjusters have current knowledge about medical and scientific research regarding the diagnosis and treatment of motor vehicle collision injuries.

44.   GEICO owed a duty to James Kight to use scientific research in an intellectually honest manner in evaluating injury claims.

45.   GEICO owed a duty to James Kight to avoid misrepresenting facts or policy provisions.

46.   GEICO owed a duty to James Kight to avoid attacking the character, reputation, and credibility of a person making a claim.

47.   GEICO owed a duty to James Kight to explain how it interprets its policy and how it handles similarly situated claims.

48.   GEICO owed a duty to James Kight to adhere to Arkansas law for claims arising in Arkansas.

49.   GEICO owed a duty to James Kight to avoid unfair claims settlement practices as defined in the Trade Practices Act.

50.   GEICO owed a duty to James Kight to adhere to the rules and regulations of the Arkansas Insurance Department.

51.   GEICO owed a duty to James Kight to settle his UIM claim without influencing settlements under other portions of the insurance policy coverage.

52.    GEICO owed a duty to give the benefit of the doubt to its insured when making claims decisions.

53.    GEICO owed a duty to James Kight to reevaluate claims as new information is developed, including but not limited to, discovery responses after lawsuits are filed.

54.    Failure to discharge these duties and obligations constitutes evidence GEICO prevented, hindered, or delayed performance of its obligations owed under the insurance policy.

55.    In this case, GEICO failed to discharge these duties and obligations owed to James Kight.

56.    There is no good faith defense to GEICO's actions, and these actions were not the result of an honest error in judgment.

**IX. INFORMATION LIKELY TO BE IN THE POSSESSION OF DEFENDANT GEICO**

57.    James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

58.    Most of the proof of James Kight's claims will be uniquely and solely in the possession of GEICO.

59.    Because the facts of this case are peculiarly within the opposing party's knowledge, James Kight pleads these allegations generally as to the malice, intent, knowledge, and state of mind of GEICO.

60.    Such allegations have evidentiary support arising out of the facts of this case, and James Kight believes such allegations will have further evidentiary support after a reasonable opportunity for further investigation and discovery from GEICO.

### X. COUNT 1 – BREACH OF INSURANCE CONTRACT BY DEFENDANT GEICO

61.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

62.     GEICO issued an automobile policy of insurance insuring James Kight's vehicle at the time of this motor vehicle collision as described above.  One portion of the insurance policy for which GEICO charged and Mr. Kight paid premiums included underinsured motorist coverage in the amount of $100,000.00 per person.

63.     James Kight has made a demand for payment of underinsured motorist insurance policy limits of $100,000.00 upon GEICO.

64.     Despite the demand, GEICO has failed and refused to pay the policy limits to James Kight.  Thus, it has breached its contractual policy of insurance with Mr. Kight by not paying the underinsured motorist insurance benefits to which Mr. Kight is entitled.

65.     GEICO violated the duty to evaluate James Kight's claim in good faith and deal fairly with Mr. Kight in performing GEICO's obligations under the insurance policy.

66.     GEICO violated the duty to provide James Kight with a reasonable explanation of the basis in the insurance policy in relation to the facts and applicable law for GEICO's settlement offers.

67.     GEICO violated the duty to consider all of the documentation and evidence supporting James Kight's UIM claim.

68.     GEICO violated the duty to give James Kight at least equal consideration to Mr. Kight's interests as GEICO gave its own interest when determining whether to accept or reject an offer of compromise.

69.    GEICO violated the duty to treat James Kight consistently with the requirements of the laws and regulations promulgated by the Arkansas Insurance Department and codified by the Trade Practices Act.

70.    GEICO violated the duty to conduct a full, fair, prompt, and objective investigation of James Kight's UIM claim at GEICO's own expense.

71.    GEICO violated the duty to fully, fairly, and promptly evaluate James Kight's UIM claim.

72.    GEICO violated the duty to avoid denying or underpaying any part of James Kight's UIM claim based upon insufficient information, speculation, or biased information.

73.    GEICO violated the duty to provide James Kight with a written explanation pointing to facts and policy provisions supporting a denial of his claim.

74.    GEICO violated the duty to objectively evaluate James Kight's UIM claim based on all available evidence, and not just the evidence GEICO believes to support its position.

75.    GEICO violated the duty to consider only factors in its evaluation of James Kight's UIM claim for which there was evidence.

76.    GEICO violated the duty under Arkansas law to avoid preventing, hindering, or delaying the performance of its obligations owed to James Kight and other policyholders.

77.    GEICO violated the duty to treat James Kight's UIM claim as a non-adversarial process.

78.     GEICO violated the duty to James Kight to educate its auto claims adjusters about the nature, extent, and permanency of injuries capable of being caused by motor vehicle collisions.

79.     GEICO violated the duty to James Kight to ensure its auto claims adjusters have current knowledge about medical and scientific research regarding the diagnosis and treatment of motor vehicle collision injuries.

80.     GEICO violated the duty to James Kight to use scientific research in an intellectually honest manner in evaluating injury claims.

81.     GEICO violated the duty to James Kight to avoid misrepresenting facts or policy provisions.

82.     GEICO violated the duty to James Kight to avoid attacking the character, reputation, and credibility of a person making a claim.

83.     GEICO violated the duty to James Kight to explain how it interprets its policy and how it handles similarly situated claims.

84.     GEICO violated the duty to James Kight to adhere to Arkansas law for claims arising in Arkansas.

85.     GEICO violated the duty to James Kight to avoid unfair claims settlement practices as defined in the Trade Practices Act.

86.     GEICO violated the duty to James Kight to adhere to the rules and regulations of the Arkansas Insurance Department.

87.     GEICO violated the duty to James Kight to settle his UIM claim without influencing settlements under other portions of the insurance policy coverage.

88.     GEICO violated the duty of giving the benefit of the doubt to its insured when making claims decisions.

89.     GEICO violated the duty to James Kight to reevaluate claims as new information is developed, including but not limited to, discovery responses after lawsuits are filed.

90.     As a result of GEICO's breach of the insurance contract, James Kight is entitled to recover a judgment against it in the amount of $100,000.00 for underinsured motorist insurance benefits, together with a statutory reasonable attorney's fees, pre-judgment interest, post-judgment interest and twelve (12) percent penalty.

## XI. AMOUNT OF DAMAGES

91.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

92.     James Kight's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Mr. Kight should be awarded a judgment as against GEICO in an amount to fully and fairly compensate his for each and every element of damages that has been suffered.

## XII. PUNITIVE DAMAGES

93.     James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

94.     James Kight is also entitled to punitive damages for GEICO's reckless acts and omissions that occurred under circumstances where their conduct, in total disregard of the consequences, would naturally and probably result in injury or damages to Mr. Kight.  GEICO knew or should have known, in light of the surrounding

circumstances, which its conduct would naturally and probably result in serious injury, and continued this conduct with malice and reckless disregard for the consequences of its actions for which punitive damages should be awarded. Mr. Kight is entitled to recover punitive damages in accordance with Arkansas law.

95.    In addition to actual, special, consequential and compensatory damages, James Kight demands a judgment against GEICO for punitive damages in an amount necessary and sufficient to deter GEICO from the above described conduct and to punish GEICO for their willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

### XIII. DEMAND FOR JURY TRIAL

96.    James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

97.    James Kight demands a jury trial for all issues of fact presented by this action.

### XIV. RESERVATION OF ADDITIONAL CLAIMS

98.    James Kight incorporates by reference herein the preceding paragraphs as though stated word-for-word.

99.    James Kight reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, James Kight prays that after a jury trial of this action that she be awarded the following:

> a.    A judgment against GEICO in such an amount that will fully and fairly compensate his for all of the above described damages and in an amount in excess of that required for federal court jurisdiction in diversity of

citizenship cases;

b.    A judgment and verdict against GEICO awarding exemplar or punitive damages as permitted by law;

c.    All costs expended herein including attorneys' fees and any expert costs and fees as permitted by law;

d.    A pre- and post-judgment interest award against GEICO to compensate for loss of money and to the extent of and for the reasons permitted by law; and

e.    All other proper relief to which she may be entitled in the premises.

Respectfully submitted,

Paul Byrd, ABN 85020
Sara Silzer, ABN 98118
Maryann Furrer ABN 2015116
Jordan Davis, ABN 2017034
Patrick Kirby, ABN 88125
**Paul Byrd Law Firm, PLLC**
415 North McKinley, Suite 210
Little Rock, AR 72205
Phone: (501) 420-3050
Fax: (501) 420-3128
Email: Paul@PaulByrdLawFirm.com
Email: Sara@PaulByrdLawFirm.com
Email: Maryann@PaulByrdLawFirm.com
Email: Jordan@PaulByrdLawFirm.com
Email: Patrick@PaulByrdLawFirm.com

By:    /s/ Paul Byrd
       Paul Byrd, ABN 85020

ELECTRONICALLY FILED
Grant County Circuit Court
Geral Harrison, Circuit/County Clerk
2021-Apr-05  16:19:57
27CV-21-33
C07D01 : 15 Pages

## IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
## CIVIL DIVISION

**JAMES KIGHT**                                                        **PLAINTIFF**

**V.**                                  **CASE NO. _____**

**GOVERNMENT EMPLOYEES INSURANCE**
**COMPANY a/k/a GEICO**                                    **DEFENDANT**

**Exhibit "A" to Plaintiff's Complaint**

C E R T I F I E D

I, T. Holmes, Claims Coverage Underwriter of Government Employees Insurance Company, a corporation organized and existing under the laws of the state of Maryland, do hereby certify that the attached Policy Declarations Page was printed from records retained in our computer data files. The amendments, endorsements, and policy contract are standard forms with information particular to this policy. Attached is a copy of policy contract number 4288-06-46-88 in the name of JAMES A KIGHT AND D L KIGHT for Endorsement effective 01-26-18, issued on 01-27-18, and in effect on 04-05-18.

_____
T. Holmes
Claims Coverage Underwriter

November 04, 2019



# GEICO.
### geico.com
Tel: 1-800-841-3000

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
One GEICO Center
Macon, GA 31295-0001

Date Issued: January 27, 2018

JAMES A KIGHT AND D L KIGHT
1628 GRANT 77
SHERIDAN AR 72150-6138

Email Address: bcnu@centurytel.net

# Declarations Page
This is a description of your coverage.
Please retain for your records.

## Policy Number: 4288-06-46-88
## Coverage Period:
11-20-17 through 05-20-18
Your coverage begins and ends at 12:01am local time at the
address of the named insured.

Endorsement Effective: 01-26-18

| Named Insured | Additional Drivers |
|---|---|
| James A Kight | None |
| D L Kight | |

| Vehicles | | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|---|
| 1 1999 | Jeep GrCher Lar | 1J4GW58S3XC512404 | Sheridan AR 72150 | |
| 2 1999 | GMC Sierra1500 | 1GTEC14W7XZ523989 | Sheridan AR 72150 | |
| 3 2002 | Linc TownCar Si | 1LNHM82W92Y626377 | Sheridan AR 72150 | |
| 4 2016 | Chev Malibu LS | 1G1ZB5ST5GF204895 | Sheridan AR 72150 | Arvest Bank |
| 5 1999 | Chev Blazer/Trl | 1GNDT13W8X2157571 | Sheridan AR 72150 | |
| 6 1997 | Dodge Ram PU1500 | 3B7HC13YXVM544009 | Sheridan AR 72150 | |
| 7 2002 | GMC Sierra1500 | 1GTEC14T42Z218545 | Sheridan AR 72150 | |
| 8 1992 | Jeep Cher Lared | 1J4FJ58S6NL141441 | Sheridan AR 72150 | |
| 9 1997 | Jeep GrChrLtdOv | 1J4GZ78S5VC572006 | Sheridan AR 72150 | |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| **Bodily Injury Liability** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $87.50 | $87.50 | $82.30 | $97.40 |
| Property Damage Liability | $50,000 | $60.90 | $60.90 | $56.30 | $83.60 |
| Medical Benefits | $5,000 | $15.70 | $15.70 | $24.00 | $17.30 |
| Accidental Death Benefits | $5,000 | $0.60 | $0.60 | $0.60 | $0.60 |
| Lost Earnings | $140 Weekly | $1.20 | $1.20 | $1.20 | $1.30 |
| **Uninsured Motorists Bodily Injury** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $23.50 | $18.80 | $18.80 | $18.80 |
| Uninsured Motorist Property Damage | $25,000/$200 | $11.20 | $11.20 | $11.20 | $11.20 |
| **Underinsured Motorist** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $26.70 | $26.70 | $26.70 | $26.70 |
| Comprehensive | $250 Ded | * | - | * | - |
| | $500 Ded | * | - | * | $90.50 |

T-D
DEC_PAGE (03-14) (Page 1 of 4)

Coverages Continued on Back
Policy Change Page 5 of 24

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
|---|---|---|---|---|---|
| Collision | $500 Ded | - | - | - | $232.10 |
| Emergency Road Service | Full | - | - | - | $5.10 |
| Rental Reimbursement | $50 Per Day | - | - | - | $28.50 |
| | $1,500 Max | - | - | - | - |
| Mechanical Breakdown | $250 Ded | - | - | - | $52.60 |
| **Six Month Premium Per Vehicle** | | **$207.30** | **$202.60** | **$201.10** | **$665.70** |

| Coverages* | Limits and/or Deductibles | Vehicle 5 | Vehicle 6 | Vehicle 7 | Vehicle 8 |
|---|---|---|---|---|---|
| **Bodily Injury Liability** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $62.30 | $62.30 | $63.40 | $68.70 |
| Property Damage Liability | $50,000 | $56.30 | $56.30 | $57.30 | $62.00 |
| Medical Benefits | $5,000 | $24.00 | $29.90 | $24.40 | $26.70 |
| Accidental Death Benefits | $5,000 | $0.60 | $0.80 | $0.60 | $1.00 |
| Lost Earnings | $140 Weekly | $1.20 | $1.50 | $1.20 | $1.90 |
| **Uninsured Motorists Bodily Injury** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $18.80 | $18.80 | $19.10 | $19.10 |
| Uninsured Motorist Property Damage | $25,000/$200 | $11.20 | $11.20 | $11.40 | $11.40 |
| **Underinsured Motorist** | | | | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $26.70 | $26.70 | $27.20 | $27.20 |
| Comprehensive | $250 Ded | - | $49.50 | - | - |
| | $500 Ded | - | - | - | - |
| Collision | $500 Ded | - | - | - | - |
| Emergency Road Service | Full | - | $9.40 | - | - |
| Rental Reimbursement | $50 Per Day | - | $28.50 | - | - |
| | $1,500 Max | - | - | - | - |
| Mechanical Breakdown | $250 Ded | - | - | - | - |
| **Six Month Premium Per Vehicle** | | **$201.10** | **$294.90** | **$204.60** | **$218.00** |

| Coverages* | Limits and/or Deductibles | Vehicle 9 |
|---|---|---|
| **Bodily Injury Liability** | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $53.00 |
| Property Damage Liability | $50,000 | $47.90 |
| Medical Benefits | $5,000 | $21.50 |
| Accidental Death Benefits | $5,000 | $0.60 |
| Lost Earnings | $140 Weekly | $1.20 |
| **Uninsured Motorists Bodily Injury** | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $19.10 |
| Uninsured Motorist Property Damage | $25,000/$200 | $11.40 |
| **Underinsured Motorist** | | |
| Each Person/Each Occurrence | $100,000/$300,000 | $27.20 |

DEC_PAGE (03-14)   (Page 2 of 4)

Coverages Continued on Next Page
Policy Change Page 6 of 24

| Coverages* | Limits and/or Deductibles | Vehicle 9 |
|---|---|---|
| Comprehensive | $250 Ded | · |
|  | $500 Ded | · |
| Collision | $500 Ded | · |
| Emergency Road Service | Full | · |
| Rental Reimbursement | $50 Per Day | · |
|  | $1,500 Max | · |
| Mechanical Breakdown | $250 Ded | · |

**Six Month Premium Per Vehicle**      **$181.90**

**Total Six Month Premium**      **$2,377.20**

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

## Discounts

| The total value of your discounts is | $896.50 |
|---|---|
| New Car (Veh 4) | $9.90 |
| Seatbelt (All Vehicles) | $37.30 |
| Multi-Car (All Vehicles) | $456.50 |
| Anti-Lock Brakes (Veh 4) | $12.20 |
| Anti-Theft Device (Veh 4) | $4.70 |
| 5 Year Good Driving (All Vehicles) | $263.20 |
| Passive Restraint/Air Bag (Veh 1, 2, 3, 4, 5, 6, 7, 9) | $112.70 |

**Contract Type: PRIME TIME**

**Contract Amendments:** ALL VEHICLES - A54AR(04-15) A54ED(03-14) A70AR(02-97)

**Unit Endorsements:**      A115B (10-11)(VEH 4,6); A149 (06-13)(VEH 1,2,3,4,5,6,7,8,9 );
A180 (10-12)(VEH 4); A190 (04-15)(VEH 1,2,3,4,5,6,7,8,9 );
A431 (05-11)(VEH 4,6); A449 (04-15)(VEH 1,2,3,4,5,6,7,8,9 );
A48 (04-15)(VEH 1,2,3,4,5,6,7,8,9 ); UE316B (06-13)(VEH 4)

---

### Important Policy Information

-Congratulations! You have earned the free Accident Forgiveness benefit. That means we will waive the surcharge associated with the first at-fault accident caused by an eligible driver on your policy.

-Please review the front and/or back of this page for your coverage and discount information.

-Special 50+ rating applies.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

---

DEC_PAGE (03-14)  (Page 3 of 4)

Continued on Back



## Important Policy Information

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-The 1997 JEEP has been added to your policy.

DEC_PAGE (03-14)  (Page 4 of 4)

Policy Change Page 8 of 24

**GEICO**

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Arkansas Family Automobile Insurance Policy



- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

**NOTICE:**

In the repair of your covered motor vehicle under the physical damage coverage provisions of this policy, we may require or specify the use of motor vehicle parts not made by the original manufacturer. These parts are required to be at least equal in terms of fit, quality, performance, and warranty to the original manufacturer parts they replace.



A-70AR (2-97)

## POLICY INDEX

Page

**SECTION I**

**Liability Coverages**
**Your Protection Against Claims From Others**

Definitions.................................................... 3
Losses We Will Pay For You.............................. 3
Additional Payments We Will Make Under The
    Liability Coverages.................................... 3
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply........ 4
Persons Insured: Who Is Covered...................... 4
Financial Responsibility Laws........................... 4
Out Of State Insurance.................................... 5
Limits Of Liability........................................... 5
Other Insurance............................................. 5
Conditions.................................................... 5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II**

**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For Medical**
**Expenses**

Definitions.................................................... 6
Payments We Will Make................................... 6
Exclusions: When Section II Does Not Apply...... 6
Limit Of Liability............................................ 6
Other Insurance............................................. 6
Conditions.................................................... 6
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**

**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions.................................................... 7
Losses We Will Pay......................................... 7
    Comprehensive Coverage............................ 7
    Collision Coverage..................................... 8
Additional Payments We Will Make Under The
    Physical Damage Coverages........................ 8
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply............................. 8
Limit Of Liability............................................ 8
Other Insurance............................................. 8

Page

Conditions.................................................... 9
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation

**SECTION IV**

**Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By Uninsured**
**And Hit And Run Motorists**

Definitions.................................................... 10
Losses We Pay............................................... 10
Exclusions: When Section IV Does Not Apply..... 10
Limits Of Liability.......................................... 11
Other Insurance............................................ 11
Trust Agreement........................................... 11
Conditions................................................... 11
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss

**SECTION V**

**General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory - Policy Period................................. 12
Premium...................................................... 12
Changes...................................................... 12
Assignment.................................................. 12
Cancellation By The Insured............................ 12
Cancellation By Us........................................ 12
Cancellation By Us Is Limited.......................... 13
Renewal...................................................... 13
Other Insurance............................................ 13
Dividend Provision......................................... 13
Declarations................................................. 13
Fraud And Misrepresentation.......................... 13
Examination Under Oath................................. 14
Terms Of Policy Conformed To Statutes............ 14

**SECTION VI**

**Amendments And Endorsements**

**Special Endorsement**

    United States Government Employees.............. 14

Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:

### SECTION I

**Liability Coverages**
**Your Protection Against Claims From Others**
**Bodily Injury Liability**
**Property Damage Liability**

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

**1.** *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

**2.** *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

**3.** *"Farm auto"* means a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

**4.** *"Insured"* means a person or organization described under PERSONS INSURED.

**5.** *"Non-owned auto"* means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**6.** *"Owned auto"* means:

   (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) a *trailer* owned by *you*;
   (c) a *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period, if

      (i) it replaces an *owned auto* as defined in (a) above; or
      (ii) we insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

   (d) a *temporary substitute auto*.

**7.** *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto.

**8.** *"Relative"* means a person related to *you* who resides in *your* household.

**9.** *"Temporary substitute auto"* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

**10.** *"Trailer"* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger, farm* or *utility auto*.

**11.** *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**12.** *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

**13.** *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

**1.** *bodily injury*, sustained by a person, and;

**2.** damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

**1.** All investigative and legal costs incurred by us.

**2.** All court costs charged to an *insured* in a covered law suit.

**3.** All interest accruing after entry of a judgment on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

**4.** Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

**5.** Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.** Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

**8.** All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

**1.** *Bodily injury* to any *insured* or any *relative* of an *insured* residing in his household is not covered.

**2.** Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**3.** *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

**4.** We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

**5.** *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

**6.** *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

**7.** We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.

**8.** We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

**9.** A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business*; (2) any other business or occupation of any *insured*, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.

However, coverage does apply to a *non-owned private passenger auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured*.

**10.** We do not cover damage to:

  (a) property owned, operated or transported by an *insured*; or

  (b) property rented to or in charge of an *insured* other than a residence or private garage.

**11.** We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

**12.** We do not cover:

  (a) the United States of America or any of its agencies;

  (b) any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto:*

**1.** *you* and *your relatives;*

**2.** any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto:*

**1.** (a) *your;*

  (b) *your relatives* when using a *private passenger, farm* or *utility auto* or *trailer*.

Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

**2.** a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of *out-of-state* motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance. However, it shall be primary if the *temporary substitute auto* or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes or as a replacement while the insured auto is out of use because of its breakdown, service or repair.

## CONDITIONS

The following conditions apply to Section I:

**1.** NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;
    (b) the time, place and details of the occurrence;
    (c) the names and addresses of the injured, and of any witnesses; and
    (d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

    (a) in the investigation of the occurrence;
    (b) in making settlements;
    (c) in the conduct of suits;
    (d) in enforcing any right of contribution or indemnity against any legally or responsible person or organization because of *bodily injury* or property damage;
    (e) at trials and hearings;
    (f) in securing and giving evidence; and
    (g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.** ACTION AGAINST US

No suit will lie against us:

    (a) unless the *insured* has fully complied with all the policy's terms and conditions, and
    (b) until the amount of the *insured*'s obligation to pay has been finally determined, either:

        (i) by a final judgment against the *insured* after actual trial; or
        (ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured*'s liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

**5.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured*'s rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II

### Auto Medical Payments

### Protection For You And Your Passengers For Medical Expenses

### DEFINITIONS

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

### PAYMENTS WE WILL MAKE

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *you* and each *relative* who sustains *bodily injury* caused by accident:

    (a) while *occupying* the *owned auto*; or
    (b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
    (c) when struck as a pedestrian by an auto or *trailer*.

2. any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

### EXCLUSIONS

### When Section II Does Not Apply

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

    (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
    (b) a vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

### LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

### OTHER INSURANCE

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS

The following conditions apply to this Coverage:

1. NOTICE

    As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;
    (b) the time, place and details of the accident; and
    (c) the names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ACTION AGAINST US

    Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

    As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

    The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

    We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

## 5. SUBROGATION

When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

## SECTION III

## Physical Damage Coverages

## Your Protection For Loss Or Damage To Your Car

## DEFINITIONS

The definitions of the terms *"auto business"*, *"farm auto"*, *"private passenger auto"*, *"relative"*, *"temporary substitute auto"*, *"utility auto"*, *"you"* and *"war"* under Section I apply to Section III also. Under this Section, the following special definitions apply:

**1.** *"Actual cash value"* is the replacement cost of the auto or property less *depreciation* or *betterment*.

**2.** *"Betterment"* is improvement of the auto or property to a value greater than its pre-loss condition.

**3.** *"Collision"* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

**4.** *"Depreciation"* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

**5.** *"Insured"* means:

(a) regarding the *owned auto*:

(i) *you* and *your relatives*;

(ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

(b) regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

**6.** *"Loss"* means direct and accidental loss of or damage to:

(a) the auto, including its equipment; or

(b) other insured property.

**7.** *"Non-owned auto"* means a *private passenger, farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or trailer within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**8.** *"Owned auto"* means:

(a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;

(b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if

(i) it replaces an *owned auto* as described in (a) above, or

(ii) we insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;

(c) a *temporary substitute auto*.

**9.** *"Trailer"* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

## LOSSES WE WILL PAY FOR YOU

## Comprehensive (Excluding *Collision*)

**1.** We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or *non-owned auto*. This includes breakage of glass and *loss* caused by:

(a) missiles;  (j) windstorm;
(b) falling objects;  (k) hail;
(c) fire;  (l) water;
(d) lightning;  (m) flood;
(e) theft;  (n) malicious mischief;
(f) larceny;  (o) vandalism;
(g) explosion;  (p) riot; or
(h) earthquake;  (q) civil commotion.
(i) colliding with a bird or animal;

No deductible will apply to *loss* caused by fire, lightening, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

**2.** We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) fire;  (e) falling objects;
(b) lightning;  (f) earthquake; or
(c) flood;  (g) explosion.
(d) theft of the entire automobile;

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

No deductible will apply due to *loss* by fire or lightning.

**3.** *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

*Collision*

1.   We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2.   We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3.   *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

4.   No deductible will apply to *loss* to an *owned* or *non-owned auto*, provided at the time of *loss*:

   (a)  the *owned* or *non-owned auto* is covered by both the Uninsured Motorists and Collision coverages of this policy; and

   (b)  the *loss* is caused by an uninsured auto whose operator:

   (i)  is positively identified; and

   (ii)  is solely at fault for the *loss*.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1.   We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

   Reimbursement will not exceed $20 per day nor $600 per *loss*.

2.   We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

3.   We will pay for *loss* to any of the following equipment (including *loss* to accessories and antennas):

   (a)  car phone;
   (b)  citizen's band radio;
   (c)  two-way mobile radio;
   (d)  scanning monitor receiver; or
   (e)  device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of *loss*:

   (a)  is permanently installed in or upon an *owned auto*; and

   (b)  that auto is insured under the appropriate coverage.

**EXCLUSIONS**

**When The Physical Damage Coverages Do Not Apply**

1.   An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2.   *Loss* due to *war* is not covered.

3.   We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4.   There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5.   Tires, when they alone are damaged by *collision*, are not covered.

6.   *Loss* due to radioactivity is not covered.

7.   *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8.   We do not cover *loss* to any radar detector.

9.   We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger, farm* or *utility autos*.

**LIMIT OF LIABILITY**

   The limit of our liability for *loss*:

1.   is the *actual cash value* of the property at the time of the *loss*;

2.   will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*;

3.   to personal effects arising out of one occurrence is $200;

4.   to a *trailer* not owned by *you* is $500;

5.   for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

   *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

   If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance. However, it shall be primary if the *temporary substitute auto* or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes or as a replacement while the insured auto is out of use because of breakdown, service or repair.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

### 1. NOTICE

As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

(a) the identity of the *insured;*
(b) a description of the auto or *trailer;*
(c) the time, place and details of the *loss;* and
(d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

### 2. TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

### 3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

(a) in the investigation of the *loss;*
(b) in making settlements;
(c) in the conduct of suits;
(d) in enforcing any right of subrogation against any legally responsible person or organization;
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

### 4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

### 5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

(a) protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) file with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require. This condition is waived

unless we furnish forms of proof of loss to any person claiming to have a *loss* under this policy for completion by that person within 20 days after a *loss* has been reported to us.

(c) At our request, the *insured* will exhibit the damaged property.

### 6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, request an appraisal of the *loss*. If both parties agree to the appraisal, each will select a competent appraiser. The appraisers will select a competent and disinterested umpire.

The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

This condition is voluntary and non-binding on both parties.

### 7. PAYMENT OF *LOSS*

We may at our option:

(a) pay for the *loss;* or
(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

### 8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

### 9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.